MONARCH COAL COMPANY, Appellee, v. PHILLIPS COAL COMPANY, Appellant.

**RAILWAYS: Right of Way—Conveyances—Priority in Time and**
**1 Right.** He who is first in time has the strongest claim in law. So held in the case of conveyances of a railway right of way.

PRINCIPLE APPLIED: A mining company desired to acquire a railway right of way, which, with the lands through which it ran, was encumbered by a trust deed. The trustee, for a valuable consideration, released the right of way from the lien of the trust deed. The owner of the right of way then conveyed the same to the mining company, which at once took possession. Six years later, the said trustee conveyed to another mining company all the lands through which the right of way ran. *Held*, the latter grantee acquired no interest thereby in the said right of way.

**RAILWAYS: Right of Way—Vesting of Title—Failure to Fulfill**
**2 Conditions Subsequent—Effect.** A stranger to a deed cannot successfully contend that such deed conveyed no title because of the grantee's failure to comply with a condition subsequent, of which failure the grantor never made complaint.

PRINCIPLE APPLIED: Grantee acquired a railway right of way, under a deed providing "that the grantee shall use the same as a public railway, otherwise this conveyance shall be void." Grantee, for many years and always, used the right of way solely as a means of conveying the product of its own mines. Grantor never objected. *Held*, a stranger to this deed, contending for prior title right under later conveyances from the same grantor, could not successfully contend that title did not pass by reason of the grantee's failure to operate as a general public railway.

**RAILWAYS: Right of Way—Failure to Operate—Reversion of Title**
**3 —Statute of Limitation.** Before a railway right of way reverts to the owner of the land from which the right of way was carved, there must be failure to use or operate the road for a period of eight years. (Section 2015, Code, 1897.)

*Appeal from Monroe District Court.*—D. M. ANDERSON, Judge.

SATURDAY, FEBRUARY 12, 1916.

REHEARING DENIED, FRIDAY, NOVEMBER 24, 1916.

A suit in equity, to settle and determine conflicting claims of the parties to a right of way, for the construction, use and operation of a railroad for the transportation of coal. There was a decree below sustaining plaintiff's claims as to portions of said right of way, also sustaining defendant's claims as to other portions thereof; while as to still other portions, the parties were held to have a right therein in common. It also held, as to still another portion, that neither party had title. The defendant alone appeals.—*Affirmed.*

*Fred Townsend* and *F. G. Orelup,* for appellant.

*McNett & McNett* and *Mabry & Hickenlooper,* for appellee.

WEAVER, J.—Although the right of way as a whole is quite short, the sources of the conflicting claims asserted by the parties to this action are quite numerous, varying in nature and complexity with each small tract of land over which it is laid. It is impracticable within reasonable bounds to here attempt any statement of the matters of evidence in minute detail, and we shall content ourselves with reference thereto in quite general terms. Originally, there was a line of railway, used for coal purposes, extending from the town of Hilton on the Wabash Railroad in a southeasterly direction through portions of Sections 10, 15, 14, 23 and 24, to a junction with the Chicago, Milwaukee & St. Paul Railway, at the village of Foster. Later, because of the lessened coal supply, or for other reasons, the use of this coal road, or of parts of it, was suspended or abandoned, with the result that different claims of right have attached to different parts or sections of the right of way, some of them based upon conveyances, or attempted conveyances, from corporations holding or claiming title to such right of way; others, upon conveyances from owners or alleged owners of the tracts crossed by such way; and perhaps still others, upon adverse possession. The defendant owns a coal mine, the shaft of which is near the

halfway point between the termini of the old right of way, and plaintiff is opening a line west of the northern terminus thereof, to which it proposes to extend the right of way and track.

The relief granted by the trial court renders it necessary, or at least most convenient, to consider the right of way in six divisions, beginning at the southeast terminus and extending in numerical order to the northwest terminus. In this, we adopt the plan presented in the brief for the appellee. According to the decree, the first division belongs to both plaintiff and defendant in equal right; the second division belongs exclusively to the plaintiff; the third division belongs exclusively to the defendant; the fourth division belongs to neither plaintiff nor defendant, but the defendant is in possession, and the plaintiff is by the decree enjoined from disturbing the same; and the fifth and sixth divisions are the property of the plaintiff. The title to the several divisions or fractions of the right of way is by the decree established and quieted in accordance with the above recited findings.

As to the sixth division, which includes the northwestern terminus, the defendant lays no claim, and it need not be further considered; and, as plaintiff is denied any right in the third and fourth divisions and does not appeal, these also may be considered as eliminated from the controversy. This leaves to be considered, for the purposes of the appeal, the right of way in the first division, which the court awards to both in equal right, and the second and fifth divisions, which are awarded exclusively to the plaintiff; and to these we shall confine our attention.

I. The first and second divisions may be considered together, as the plaintiff's right thereto is derived from the same source and through the same conveyances. About the year 1900, the St. Paul Coal Company, owning mining rights near the northern terminus of this route, and desiring an outlet to the Chicago, Milwaukee & St. Paul Railway,

1. RAILWAYS: right of way: conveyances: priority in time and right.

acquired from various sources a right of way from the Wabash Railway on the northwest, extending southeasterly a distance of about three miles to the station of Foster, on the first mentioned line.   At that time, the Deep Vein Coal Company owned a mine, the shaft of which was about half a mile northwest of the station at Foster, together with a right of way and a completed railroad switch making connection between the Milwaukee Railway and the mine.   The property of the Deep Vein Company being then subject to a trust deed to one Bonnifield, negotiations were had, with the result that, in consideration of $2,000 paid by the St. Paul Coal Company, a release was made of the Bonnifield lien on the coal road and right of way, extending from the southeast terminus to the Deep Vein shaft, and thence northwest over an uncompleted portion of such coal road for an additional distance of about one fourth of a mile, to the east line of a tract known in the record as the R. C. Smith land.   The instrument of release also embodied a provision by which the trustee undertook (if it should be found that he was authorized so to do) to make conveyance to the St. Paul Coal Company of an equal or joint right with the Deep Vein Coal Company to the use of said right of way.   In apparent execution of the purpose so indicated, to convey said right of way to the St. Paul Company, the Deep Vein Company, on December 28, 1901, executed and delivered to the former a deed to all said right of way, reserving to itself the right to joint use therein so long as it should continue to operate a coal mine there, after which the right of the St. Paul Company, its successors and assigns, should continue in perpetuity.  Under the rights thus acquired the St. Paul Company entered upon and continued in the use of said right of way, until at least 1907. Whatever title was thus acquired by the last mentioned company was afterwards conveyed to the plaintiff herein.   The defendant's claim of title to these divisions, 1 and 2, of the right of way, rests upon the fact that Bonnifield, the trustee, apparently acting under the deed of trust aforesaid, conveyed

to the Phillips Fuel Company a certain acreage of lands, including coal and mining rights thereon, the land so described being the same, or part of the same, over which the right of way aforesaid was laid, and whatever title was thus conveyed has since been conveyed to the defendant. But, six years before this conveyance was made to the Phillips Fuel Company, the lien of the trust deed had been released by the trustee, and the Deep Vein Company had conveyed the right of way to plaintiff's grantor. The later conveyance manifestly vested no title in the Phillips Company, and its subsequent conveyance vested none in the defendant. The Deep Vein Company appears to be no longer asserting any rights in the premises, and it would seem that, in so far as the right of way from the connection of the Milwaukee road to the R. C. Smith land is concerned, it is the plaintiff, rather than the defendant, who has any ground for complaint with the decree. But the plaintiff has not appealed, and, no merit being shown in the claim of title asserted by the defendant, the title to these divisions, 1 and 2, of the right of way, must stand as adjudicated by the trial court.

II. The one point left undisposed of has relation to the fifth division, a small piece of the right of way at the point from which plaintiff proposes to extend the track to its new

2. RAILWAYS: right of way: vesting of title: failure to fulfill conditions subsequent: effect.

mine. The land was formerly owned by one Whitlock, who, in the year 1900, conveyed the right of way to the St. Paul Company, through which it is now claimed by plaintiff. The deed from Whitlock contained a clause to the effect that "the railway shall be operated as a public railroad, the same as and as fully as if the right of way should be procured for it by condemnation proceedings, otherwise this conveyance shall be null and void."

The appellant insists that no title was acquired under this conveyance, because, although the road was in fact constructed and operated for eight years or more, it was always operated as a coal road only, and not as a "public railroad,"

doing a business of general transportation; and that the subsequent deed by Whitlock to defendant or its grantor of the forty-acre tract of land, without any mention or exception of the right of way, was effectual to vest in the grantee the entire title, unburdened by the railway easement. The assumption that the vesting of title to the right of way in the St. Paul Coal Company was dependent upon the performance of the condition contained in the deed, cannot be correct. The title passed at once upon delivery of the deed. The condition was a condition subsequent and not precedent to the vesting of the title. It afforded grounds, perhaps, upon which the grantor, acting within a reasonable time, could declare a forfeiture and, by proper proceedings, regain possession. But it was entirely competent for him to waive the performance, and, such waiver being shown, the title would be relieved of the condition. It is shown that this grantor permitted the grantee to go on using the railway for the transportation of coal only, and not as a road for general transportation purposes, for a period of eight years; and there is nothing to indicate, even by inference, that he ever objected thereto or sought in any manner to assert or enforce a forfeiture because of a violation of the condition expressed in his deed. In the absence of other explanation, we think this must be said, as a matter of law, to have been a waiver of the right of forfeiture for nonperformance of the condition.

It is also objected that the operation of the road at this point had been abandoned before Whitlock made the deed under which defendant claims, but this is immaterial, unless

3. RAILWAYS: right of way: failure to operate: reversion of title: statute of limitation.

the abandonment was for such length of time as to bar the company's right to resume its possession and operation. The road had admittedly been in use up to a time not more than five years before the beginning of this action, while the statutory period of abandonment which will bar the exercise of such right, is eight years. Code Section 2015.

Upon the record presented, there is no other question

which needs to be considered or decided. An examination of the entire case satisfies us that the conclusion reached by the trial court works substantial equity between the parties, and the decree appealed from is therefore—*Affirmed.*

EVANS, C. J., DEEMER and PRESTON, JJ., concur.